UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD CUMMINGS,

                 Petitioner,                  Case Number 11-10003
                                              Honorable David M. Lawson

v.

LLOYD RAPELJE,

                 Respondent.

_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

Petitioner Chad Cummings, a prisoner in the custody of the Michigan Department of Corrections, was convicted of several criminal sexual conduct charges relating to the sexual abuse of his then-girlfriend's twelve-year-old daughter. He was sentenced to concurrent minimum prison terms totaling thirty years. He challenges the constitutional validity of his convictions and sentences raising a host of issues, fifteen in number, in his petition for a writ of habeas corpus. Because none has merit under the highly deferential standard of review prescribed by 28 U.S.C. § 2254(d), the Court will deny the petition.

I.

The petitioner was tried and convicted by a Berrien County, Michigan jury on March 6 though 8, 2007. At trial, the victim, N.M., testified that the petitioner moved in with her mother, Judy Dusoe, with whom she was living in October 2004. N.M. was twelve years old at the time. Just before Christmas of that year, Dusoe sent the petitioner and N.M. to the grocery store. When they discovered that the store was closed, and while in the petitioner's car, the petitioner asked N.M. if she "wanted him." N.M. did not remember responding, but the petitioner drove a while and then pulled off the side of a road, where he told N.M. to pull her pants and underwear down. The

petitioner penetrated N.M.'s vagina with his fingers and his penis. The petitioner told N.M. not to tell anyone about the incident, particularly her mother.

N.M. testified that the petitioner had sex with her again in January 2005 and again after she turned thirteen years old, between five and ten times in all, sometimes in his car and sometimes in the trailer. The incidents involved both digital and penile penetration of N.M.'s vagina. The last sexual encounter occurred in May 2005, by which time N.M. was living with her father.

One incident in particular occurred on the afternoon of May 8, 2005, which was Mother's Day, when N.M. and Cindy Bickering, a family friend (sometimes referenced in the record as "Bickner"), went to the petitioner's home. The petitioner asked Bickering to go to a store to get some liquor. The petitioner and N.M. had sexual intercourse again during Bickering's absence. When Bickner returned, all three of them drank alcohol. N.M. went to sleep in the petitioner's bed. N.M. testified that she believed that the petitioner's mother came to his home that night.

The following morning, Bickering and N.M. went with the petitioner to Michigan City, Indiana and checked into a hotel. The petitioner and Bickering smoked crack cocaine before Bickering left. The petitioner again had sex with N.M. The three later returned to the petitioner's trailer in Michigan. The petitioner brought a jet-ski back to the trailer. The petitioner subsequently set the jet-ski on fire behind the trailer. The police and fire department were called to extinguish the fire. A police officer verified that this fire occurred on the evening of May 9.

N.M.'s father, Duane Maddox, testified that she left his house at about 6:00 p.m. on Mother's Day, and he did not hear from N.M. until the next morning. N.M. returned to his home on the following Tuesday afternoon. Although N.M. did not say anything, she looked tired, her hair was "ratty," and it appeared as though she had "had a rough time." Maddox took N.M. to the Child

-2-

Advocacy Center, but she would not say anything about the petitioner.  Before that, N.M. told her father she had been at Gary Johnson's house.

The petitioner was on electronic tether for another offense during May of 2005.  The defense called Shelly Graham, a parole agent for the Department of Corrections, who testified about the tether records.  Graham testified that the petitioner was authorized to leave his home on May 8 (Mother's Day) for work, and the records showed that he left his home several times that day.  Graham was not able to verify through the records that the petitioner was actually at his job on either May 8 or May 9.  The petitioner's employer testified that the petitioner could not have been at work on May 8 because their company did not operate on Sunday.  The petitioner's employer did not know if the petitioner worked for him on May 9.

N.M. eventually reported the petitioner's sexual abuse to a teacher.  She also reported the sexual incidents to her mother the same day, and later spoke to a forensic interviewer, Barbara Welke, at the Child Advocacy Center.  Welke was permitted to give an opinion as an expert witness and explained that delayed or gradual disclosure of sexual abuse by minors was not uncommon.

Judy Dusoe testified that she noticed that the petitioner spent much more time with N.M. than with her other two daughters.  Dusoe asked N.M. if there was more to it, but N.M. did not tell her anything about the sexual relationship.  Dusoe also testified that in July 2005, N.M. apologized for stating that the petitioner had done something inappropriate to her.  Dusoe said that Layla Lawson, the petitioner's cousin, was present when she heard this remark.  The petitioner was present as well, and he denied that anything inappropriate was going on.  N.M. did not remember this conversation.

The petitioner's trial attorney impeached N.M. with several prior inconsistent statements. N.M. previously stated that she, the petitioner, and Bickering had gone to Michigan City on the same day that she and the petitioner had sex in the trailer, explaining that because the petitioner's mother had arrived, they had stayed at the hotel in Michigan City for a few days. However, in an interview with Welke, N.M. denied anything had happened and had actually fabricated an elaborate story of where she was over Mother's Day weekend. When N.M. finally told Welke what had happened, N.M. stated the reason she had not said anything earlier was her fear that her sisters would be taken away from her mother. N.M. had not been entirely consistent about the number of times she had sex with the petitioner in his car rather than in his trailer.

Charles Kotaska, an acquaintance of Judy Dusoe, testified for the defense. He stated that Dusoe had talked about framing the petitioner for criminal sexual conduct. Kotaska indicated that N.M. informed him that the petitioner had not done anything inappropriate to her. N.M. told Kotaska that she made the allegations for her mother's sake and had made similar allegations before to get the petitioner and Dusoe back together. N.M. denied making these remarks to Kotaska.

The jury convicted the petitioner of four counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) and (1)(b)(i), and one count of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(a). He was sentenced as a fourth felony habitual offender to concurrent prison terms of 30 to 62.5 years on each count of first-degree criminal sexual conduct, and 24 years, two months to 62.5 years for third-degree criminal sexual conduct. The petitioner's convictions were affirmed on direct appeal. *People v. Cummings*, No. 281545, 2009 WL 1352014 (Mich. Ct. App. May 14, 2009); *lv. den.* 485 Mich. 1074, 777 N.W.2d 154 (2010).

On January 3, 2011, the petitioner filed a habeas petition, which was held in abeyance on May 6, 2011 so that the petitioner could return to the state courts to exhaust additional claims. He filed a post-conviction motion for relief from judgment in the state trial court, which was denied. *People v. Cummings,* No. 2006-406086-FC (Berrien County Circuit Court, June 23, 2011). The Michigan appellate courts denied the petitioner leave to appeal. *People v. Cummings*, No. 310944 (Mich. Ct. App. July 3, 2013); *lv. den.* 495 Mich. 934, 843 N.W.2d 206 (2014).

On August 11, 2014, the Court granted the petitioner's motion to lift the stay and permitted the petitioner to file an amended habeas petition, which raised the following claims:

I. Trial counsel was constitutionally ineffective in failing to challenge a biased juror for cause or removing with peremptory challenge.

II. The prosecution presented legally insufficient evidence that petition [sic] committed the offense thereby denying his right to due process under the federal and Michigan Constitutions and his conviction should be vacated.

III. Appellate counsel's refusal to provide an indigent petitioner with a copy of his transcripts of the trial court proceedings so as to allow the petitioner to fully and fairly exercise his right to file a pro per supplemental brief pursuant to admin. Order 2006-6, Std. 4, denies the petitioner his First Amendment right to access the courts, and his due process rights to a full and fair appeal of right.

IV. The petitioner was denied his Sixth Amendment right to effective assistance of counsel at trial where trials [sic] counsel's overall conduct fell below an objective standard or reasonableness.

V. The trial court violated petitioner's due process rights by denying petitioner's motion for appointment of substitute counsel where a conflict developed over fundamental trial tactics and defense counsel failed to subpoena exculpatory witnesses despite repeated demands from his client.

VI. The trial court abused its discretion, denied petitioner a fair trial, and denied petitioner his right to present a defense where the court prevented several defense witnesses from testifying stating that said witnesses violated the sequestration order.

VII. Petitioner submits that he is entitled to resentencing without habitual offender sentence enhancement because he did not receive actual notice of a timely filed notice of sentence enhancement.

VIII. Defendant was prejudiced by testimony from a "forensic expert" that offered the jury her expert opinion of complaints [sic] credibility.

IX. The testimony by an unqualified person about delay in reporting child abuse denied defendant a fair trial.

X. Defendant was denied his right to testify by invalid waiver based upon ineffective assistance of trial counsel.

XI. Defendant was denied due process and fair trial by failure to provide requested polygraph as required by statute, and ineffective assistance of counsel for failure to protect and assert these rights in defending against the charges.

XII. Defendant was denied a fair trial and various rights including the presumption of innocence and the right of confrontation where the judge made findings of fact for the jury.

XIII. Defendant was denied effective assistance of trial counsel.

XIV. Defendant should be resentenced because of improper sentencing guidelines scoring and denial of due process where the trial court made findings based upon word of attorney despite availability of witnesses who did testify to other matters.

XV. Defendant was unconstitutionally prejudiced by ineffective assistance of appellate counsel.

The respondent filed an answer, asserting that some of the petitioner's claims are procedurally defaulted and all lack merit.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's denial of those claims on that basis is an adequate and independent ground for the denial of relief under state law, which is not reviewable here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits,

*Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).   Because Cummings filed his petition after the AEDPA's effective date, its standard of review applies.   Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions."   *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).   "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

-7-

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

## A.

The petitioner has advanced several claims targeting his trial attorney's representation of him, alleging that his lawyer's defective performance deprived him of his right to effective representation, which the Sixth Amendment guarantees.  He also criticizes the performance of his appellate counsel.  These arguments appear in claims I, IV, X, XIII, and XV.

-8-

Success on such claims is relatively rare, because the standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. ---, ---, 133 S. Ct. 1781, 1786 (2013)). In the context of a habeas corpus petition presenting an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Ibid.*

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the

-9-

result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

1.

In claim I, the petitioner contends that his trial counsel was ineffective by failing to challenge two jurors for cause, or using peremptory challenges to excuse them, on the ground that the two jurors were biased.  The Michigan Court of Appeals rejected the petitioner's claim:

> Here, Juror 12 stated that when she was very young, her sister had been the victim of a sexual crime.  Juror 27 stated that she personally knew a potential prosecution witness and had two family members who had worked with him.  When questioned by the trial court, both jurors unequivocally stated that they could set these experiences aside and could be fair and impartial in rendering a verdict.  Given these statements and whatever other "hunches" counsel may have had, counsel was apparently satisfied that Jurors 12 and 27 could be fair and impartial despite their past experiences.  "A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury."  We will not substitute our judgment for that of defense counsel, nor may we use the benefit of hindsight to assess counsel's performance.  Accordingly, we reject defendant's claim that defense counsel was ineffective for failing to dismiss Jurors 12 and 27.

*Cummings*, 2009 WL 1352014, at *2 (citations omitted).

The state court's decision on this issue did not contravene or misapply federal constitutional law.  "Counsel's actions during *voir dire* are presumed to be matters of trial strategy." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001) (citing *Hughes v. United States,* 258 F.3d 453, 457 (6th Cir. 2001)).  The petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  The petitioner did not do so on his direct appeal, and he has offered no additional information that might allow this Court

-10-

to second-guess the Michigan Court of Appeals. The petitioner has not shown how trial counsel's decisions during *voir dire* amounted to defective performance.

Moreover, "[b]ecause [the petitioner's] claim of ineffective assistance of counsel is founded upon a claim that counsel failed to strike a biased juror, [the petitioner] must show that the juror was actually biased against him." *Miller*, 269 F.3d at 616 (citing *Hughes,* 258 F.3d at 458). The petitioner has not offered any evidence showing that he was prejudiced by counsel's failure to challenge these two jurors. To the contrary, the only information in the record is the statements of the two jurors that they could be fair and impartial in deciding petitioner's case. *See Baze v. Parker,* 371 F. 3d 310, 318-22 (6th Cir. 2004).

The state court's determination of this issue cannot be assailed under 28 U.S.C. § 2254(d)(1) or (2).

2.

In claim IV, the petitioner argues that his lawyer failed to call several witnesses to testify and failed to present certain records to buttress the petitioner's defense. Those potential witnesses include Rusty Bolton, Cindy Bickering, Gary Johnson, Layla Lawson, Judy Pries, and Officer Caleb Slavens, who would have been called to impeach the credibility of the victim or her mother or both.

The Michigan Court of Appeals rejected the claim, explaining:

> Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy, which this Court will not second-guess with the benefit of hindsight. And, "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense."

> First, defendant contends that counsel should have called Officer Slavens to testify regarding what the victim's mother told him that the victim had said. However, this testimony would have been inadmissible hearsay. MRE 801(c); MRE 802. Counsel cannot be ineffective for failing to advocate a meritless position, and, because this

-11-

testimony would have been inadmissible, it could not have provided defendant with a substantial defense.  Defendant was not denied effective assistance on this basis.

Next, defendant argues that counsel should have called Judy Pries and Layla Lawson, his mother and cousin, as witnesses.  The record shows that defense counsel did intend to have Pries and Lawson testify.  However, before they could testify, the trial court excluded their testimony because they violated the court's sequestration order, and as a result it would have been futile to attempt to call Pries and Lawson as witnesses.  Again, counsel cannot be ineffective for failing to call these witnesses, as such a request would be meritless, and counsel's failure to call them cannot even be attributed to his own decisions.

Defendant further contends that counsel failed to contact his boss, Rusty Bolton, and should have called Bolton as a witness.  According to defendant, this testimony would have significantly undercut the prosecution's theory and discredited the victim's testimony.  Although the record reveals that Bolton was not called as a witness, defendant's other assertions are not supported on the record and defendant has failed to offer any support with any documentary evidence.  Because our review is limited to errors apparent on the record, and we see none here, we conclude defendant has failed to show that he was deprived of a substantial defense and we presume that counsel's decision was based on sound trial strategy.

*Cummings*, 2009 WL 1352014, at *3-4 (citations omitted).

The state court's decision as to Officer Slavens and Layla Lawson reasonably applied federal law.  Because Officer Slavens, according to the petitioner, would have related Judy Dusoe's out-of-court statement about what her daughter allegedly had said on an earlier occasion, Slavens's proposed testimony would have been inadmissible hearsay evidence.  *See* Mich. R. Evid. 801(c). Trial counsel will not be found to have performed defectively by not calling a witness who would give inadmissible hearsay testimony.  *See Ryder v. Kerns*, 335 F. App'x 529, 537 (6th Cir. 2009). In much the same way, defense counsel cannot be faulted for not calling Layla Lawson or Judy Pries.  In fact, he attempted to call Lawson and the petitioner's mother Judy Pries as witnesses, but the trial court excluded them from testifying after they violated the sequestration order.  As the state

court observed, it was the trial court's — not counsel's — action that prevented them from testifying.  No deficient performance can be found in that instance.

The state court denied the petitioner's claims as to the remaining witnesses because the petitioner pointed to no evidence in the record — and offered none — to establish trial counsel's deficient performance or prejudice.  The petitioner attempts to cure that defect here by offering affidavits from these witnesses.  He says that Rusty Bolton was his foreman, and would have testified that the petitioner worked on May 9 and 10, 2005, when N.M. said that they had sex at his trailer and in a motel in Michigan City.  The petitioner included an affidavit from Bolton with his amended habeas petition.  Cindy Bickering's name was mentioned by N.M.'s father during his testimony as someone who accompanied N.M. during the three days in May 2005.  There is no affidavit from her in the record, and it is not clear what she would have added to the petitioner's defense.  The same can be said for Gary Johnson.  He was a person that N.M. apparently claimed to be with during her three days away from home (before she changed her story), but there is nothing in the record that indicates what Johnson actually would have said had he been called to testify.  The petitioner did not present Bolton's affidavit to the Michigan Court of Appeals on direct review.

Under 28 U.S.C. §2254(e), a federal court cannot base its decision on evidence that was not presented to the state courts unless the petitioner "was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed by § 2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (citation omitted).  Section 2254)(e)(2) requires the petitioner to show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty.  28 U.S.C. § 2254(e)(2)(B).

-13-

The petitioner has not explained why he did not present his affidavits to the state courts on direct review or during his collateral proceedings. And he has not offered a convincing argument that, with the testimony of these witnesses, "no reasonable factfinder would have found [him] guilty of the underlying offense." *Ibid.* The evidence would have impeached N.M.'s testimony, but only as to the events of May 9 and 10, 2005. The evidence did not address the other instances of sexual misconduct for which he was charged.

There is another obstacle to considering the affidavits as part of the petitioner's arguments in this habeas proceeding: the Supreme Court held that habeas review under 28 U.S.C. §2254(d) must be "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. at 181. The petitioner does not suggest that his ineffective assistance of counsel claim was not adjudicated on the merits in state court, and in fact argues that his habeas claims were fully presented in his state court proceedings. Therefore, *Cullen* precludes the Court from considering the petitioner's new evidence in reviewing petitioner's ineffective assistance of counsel claim under 28 U.S.C. §2254(d)(1). *See Campbell v. Bradshaw*, 674 F.3d 578, 590 n.3 (6th Cir. 2012) (considering affidavits submitted to the state courts on post-conviction review, but declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

The petitioner offered no evidence to the Michigan courts beyond his own assertions as to whether his witnesses would have been able to testify and what the content of these witnesses' testimony would have been. Based on the record before it, the state court reasonably applied — and did not contravene — Supreme Court case law construing the Sixth Amendment when the state court denied the petitioner's ineffective assistance of trial counsel claim for failure to call witnesses,

-14-

because the petitioner failed to show prejudice. In the absence of proof, the petitioner fails to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F. 3d 551, 557 (6th Cir. 2007).

In his claim IV, the petitioner also criticizes his lawyer for failing to obtain his tether records and the Michigan City hotel records in order to impeach the victim's testimony about the May 9-10 escapade. As the Michigan Court of Appeals noted in rejecting this claim, counsel presented the testimony of the petitioner's parole officer, and successfully offered the tether records at trial. *Cummings*, 2009 WL 1352014, at *3. That part of the claim is without merit. As to the hotel records, the Michigan Court of Appeals held:

> Our review of the record shows that counsel explicitly chose not to reveal to the jury what the hotel records contained. Here, the prosecutor attempted to question a witness about the records and defense counsel successfully objected on hearsay grounds. Consequently, defense counsel never questioned the witness regarding the records, nor did counsel ever seek to have any such records admitted into evidence. Given this course of events, it is apparent to us that counsel may have believed that the records were not helpful to the defense. Because counsel's decision appears to be based on sound trial strategy, and defendant has not provided us with any reason or record evidence that rebuts that presumption, we conclude that counsel was not ineffective for failing to produce the hotel records or question a witness about them.

*Cummings*, 2009 WL 1352014, at *3.

That decision likewise reasonably applied federal Sixth Amendment law. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Strickland*, 466 U.S. at 690). In fact, *Strickland* requires this Court to "presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.

-15-

3d 720, 749 (6th Cir. 2002). In this case, trial counsel may have determined that the hotel records would have been more prejudicial than exculpatory. The Michigan Court of Appeals chose not to second-guess that decision, and choosing not to do so did not unreasonably apply *Strickland*. *See Greenwell v. Elo*, 77 F. App'x 790, 793 (6th Cir. 2003).

It also bears mentioning that all of the additional evidence proposed by the petitioner was focused on impeaching the credibility of his accuser. But there already was plenty of evidence in the record that served that purpose, leading to the conclusion that what was left out might have been cumulative. "Additional evidence on these points [that] would have offered an insignificant benefit" will not establish prejudice under *Strickland*. *Wong v. Belmontes*, 558 U.S. 15, 23 (2009). In this case, the jury had significant evidence presented to it that the victim had been less than truthful about the sexual encounters between herself and the petitioner, that she had delayed in reporting the sexual abuse to the authorities, that she had made inconsistent statements, and that she had motives for fabricating the charges against the petitioner. Because the jury was "well acquainted" with evidence that would have supported the petitioner's contention that these charges were false, *see Wong*, 558 U.S. at 23, the state court's determination that the petitioner was not prejudiced by his attorney's performance — defective or not — was not an "unreasonable" application of *Strickland*. *Harrington*, 562 U.S. at 101 (The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard."). The petitioner is not entitled to relief on claim IV.

### 3.

In claim X, the petitioner argues that he was denied his right to testify due to an invalid waiver caused by the ineffective assistance of counsel. That argument is unpersuasive.

-16-

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A federal habeas court indulges "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F. 3d 627, 639 (6th Cir. 2009) (citation omitted). To overcome that presumption, a habeas petitioner must point to evidence in the record demonstrating that he somehow alerted the trial court to his desire to testify. *Ibid.*

In this case, the petitioner clearly indicated on the record that he discussed with his counsel the pros and cons of taking the stand and unequivocally waived his right to testify. Because the record is devoid of any indication by the petitioner that he disagreed with counsel's advice that he should not testify, the petitioner has not overcome the presumption that he willingly acceded to that advice. *Gonzales,* 233 F. 3d at 357. Nor has the petitioner made a convincing argument that the advice "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Also, the petitioner has not shown that he was prejudiced by counsel's advice that he should not testify. The petitioner asserts that he would have testified, but he leaves one guessing about the details of his proposed testimony. That is not sufficient to establish prejudice. *Hodge,* 579 F. 3d at 641 (holding that defendant did not demonstrate prejudice required to establish claim of ineffective assistance of counsel based upon defense counsel's alleged impairment of his right to testify at capital murder trial where defendant did not provide details about substance of his testimony and merely speculated that his testimony would have had impact on jury's view of certain witnesses' credibility and of his involvement in murders).

-17-

4.

In claim XIII, the petitioner contends that trial counsel was ineffective by failing to either call an expert witness to challenge Barbara Welke's testimony or to at least consult with an expert before cross-examining Welke. Once again, the petitioner falls short of establishing prejudice on this part of his claim because he has offered nothing to substantiate what this hypothetical expert would have said. Speculation is not a substitute for hard information. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006).

Moreover, although trial counsel did not call a defense expert, he extensively cross-examined Welke about whether she was aware that a friend of N.M. was murdered in front of her in the fall of 2004. Welke stated that she was unaware of the fact during the first interview and only became aware at the end of the second interview, when N.M. told Welke that she had to talk with police because she saw someone murdered. Defense counsel also elicited testimony from N.M. that she lied to Welke about several matters. "[I]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington,* 562 U.S. at 111. Defense counsel's decision to cross-examine Barbara Welke and N.M., instead of calling an expert witness to challenge Welke's testimony, was a reasonable trial strategy that defeats the petitioner's ineffective assistance of counsel claim. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005); *see also Jackson v. McQuiggin,* 553 F. App'x 575, 580-82 (6th Cir. 2014).

5.

The petitioner's claim XV focuses on appellate counsel. He says that his appellate attorney was constitutionally ineffective because he did not present the petitioner's claims III through XIV on direct appeal. It is well established that a criminal defendant does not have a constitutional right

-18-

to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). But it is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones*, 463 U.S. at 751. In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan*, 526 U.S. at 858 (quotation marks and citations omitted).

As discussed previously and below, claims III through XIV have no merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). The petitioner is not entitled to habeas relief on his argument that his appellate lawyer mishandled his direct appeal.

## C.

In claim II, the petitioner argues that the evidence was insufficient to convict because the victim was not credible, and because her testimony was not corroborated by physical evidence. The state court of appeals rejected the claim:

> Defendant first argues that the evidence was insufficient to support his convictions beyond a reasonable doubt. We cannot agree. . . . The prosecution charged defendant with two types of CSC I, which required the prosecutor to prove beyond a reasonable doubt that defendant engaged in sexual penetration of the victim and that the victim was under 13 years of age, and that defendant engaged in sexual penetration of the victim, who was at least 13 years of age but less than sixteen years of age, and who

-19-

is a member of the same household as defendant. In addition, to establish CSC III, the prosecution was required to show that defendant engaged in sexual penetration with the victim and that the victim was at least 13 years but under 16 years of age.

It is plain from the record that the prosecutor presented evidence, if believed, that demonstrated that defendant sexually penetrated the victim when she was between the ages of 12 and 13 years of age and when defendant and the victim were members of the same household. There is no merit to defendant's contrary contention that the evidence was insufficient because the victim's testimony was not credible and because no physical evidence proved that the sexual contact occurred. The victim's credibility and the weight to be afforded the evidence are strictly within the province of the jury. And, the lack of physical evidence is immaterial because uncorroborated testimony, if believed, is sufficient to establish the elements of a crime. Because we resolve all conflicts in the evidence in favor of the prosecution, we conclude that the evidence was sufficient to support defendant's convictions.

*Cummings*, 2009 WL 1352014, at *1 (citations omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (citation and footnote omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court

-20-

decision was an objectively unreasonable application of the *Jackson* standard.  *Cavazos v. Smith*, ---

U.S. ---, 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable

consequence of this settled law is that judges will sometimes encounter convictions that they believe

to be mistaken, but that they must nonetheless uphold."  *Ibid.*  Indeed, for a federal habeas court

reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so

insupportable as to fall below the threshold of bare rationality."  *Coleman v. Johnson*, ---  U.S. ---,

132 S.Ct. 2060, 2065 (2012).

The petitioner does not contend that the victim's testimony, if believed, failed to establish

the elements of the various criminal sexual conduct offenses.  Instead, the petitioner argues that the

evidence was insufficient because the victim was not believable.  However, attacks on witness

credibility are simply challenges to the quality of the prosecution's evidence, and not to the

sufficiency of the evidence.  *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002).  An assessment

of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency

of evidence claims.  *Moreland v. Bradshaw*, 699 F.3d 908, 918 (6th Cir. 2012) (citing *Brooks v.*

*Tennessee,* 626 F.3d 878, 899 (6th Cir. 2010) (Daughtrey, J., concurring)).

On habeas review, a federal court does not reweigh the evidence or redetermine the

credibility of the witnesses whose demeanor was observed at trial.  *Marshall v. Lonberger*, 459 U.S.

422, 434 (1983).  It is for the fact finder to weigh the probative value of the evidence and resolve

any conflicts in testimony.  *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court

therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews*

*v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

-21-

The state court of appeals reasonably concluded that there was evidence in the record establishing beyond a reasonable doubt each element of the charges brought against the petitioner. That decision reasonably applied *Jackson*. Indeed, the testimony of a single, uncorroborated prosecuting witness or other eyewitness that covers the elements is generally sufficient to support a conviction. *Brown v. Davis*, 752 F. 2d 1142, 1144-1145 (6th Cir. 1985). The petitioner's argument that N.M. was not a credible witness does not entitle him to habeas relief. *See Tyler v. Mitchell*, 416 F. 3d 500, 505 (6th Cir. 2005).

Likewise, the fact that the victim's testimony was uncorroborated does not render the evidence in this case insufficient. The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's conviction. *See United States v. Howard,* 218 F. 3d 556, 565 (6th Cir. 2000) (*citing Gilbert v. Parke,* 763 F. 2d 821, 826 (6th Cir. 1985)).

D.

In claim V, the petitioner contends that the trial court deprived him of his right to counsel when he denied the petitioner's motion for new counsel without adequately inquiring into the cause of the dissatisfaction between the petitioner and his appointed lawyer. The petitioner raised this issue in a *pro se* brief he filed on direct appeal, and the court of appeals rejected the claim. The court of appeals observed that a trial court should allow substitution of attorneys when good cause is shown, and that the trial court's refusal to substitute counsel was reviewed for abuse of discretion. *Cummings*, 2009 WL 1352014, at *6. The court then reasoned:

> Here, the basis of defendant's motion was a breakdown in the attorney-client relationship because of defense counsel's alleged failure to provide defendant with discovery materials and failure to interview certain witnesses. At the motion hearing, defendant claimed he had received nothing from counsel, aside from part of a police report. After a discussion on the record with defendant and both opposing counsels, the trial court determined that the materials were either privileged, had not

-22-

been delivered to defense counsel or possibly did not exist, or had just been delivered to defense counsel. Accordingly, the trial court found that a substitution of counsel was not warranted.

Given these facts, we cannot conclude that the trial court abused its discretion. Nothing about defendant's complaints indicates that counsel and defendant had developed a legitimate difference of opinion with respect to a fundamental trial tactic. And, further, the trial court's inquiry into the matter revealed that counsel had not provided the documentation for reasons other than the pursuit of a different trial strategy. Accordingly, defendant failed to demonstrate good cause, as the trial court's inquiry revealed, and the trial court did not err by denying his motion for substitute counsel.

*Ibid.*

This decision did not misapply or contravene federal constitutional law as declared by the Supreme Court. The Supreme Court has recognized that there are times when assigned counsel should be replaced. In *Martel v. Clair*, --- U.S. ---, 132 S. Ct. 1276 (2012), the Court discussed motions by habeas petitioners to substitute counsel in capital cases. But that discussion focuses on statutory interpretation, not the Sixth Amendment. The Court applied an "interest of justice" standard, interpreting 18 U.S.C. § 3599(e). *Id.* at 1284. When reviewing the denial of a motion to substitute a habeas petitioner's attorney, the Court suggested that courts consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Id.* at 1287.

Although *Martel* is not a decision that bears directly on state courts — because it interpreted a federal statute that governs only federal district courts, not the Sixth Amendment — the Michigan Court of Appeals did not unreasonably apply its underlying principles when affirming the denial of the petitioner's request for a new attorney. Instead, it noted that the trial court inquired into the

-23-

nature of the dispute and found no substantial breakdown of the attorney-client relationship. That decision does not deserve criticism by a federal habeas court. "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Ibid.* And because the standard established by section 2254(d) also is "highly deferential[,] when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted).

In point of fact, there is no clearly established federal law from the Supreme Court requiring an inquiry into the nature of a defendant's dissatisfaction with his counsel before denying a motion for substitution of counsel. *See James v. Brigano*, 470 F. 3d 636, 643 (6th Cir. 2006) (reversing a grant of relief because the inquiry requirement was not clearly established federal law). Therefore, unless the petitioner can show that he received the ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his lawyer before denying a motion for substitution of counsel does not entitle the petitioner to habeas relief. *See Peterson v. Smith,* 510 F. App'x 356, 366-67 (6th Cir. 2013).

As discussed above, the petitioner has not shown that he was denied the effective assistance of counsel at trial. Therefore, he is not entitled to habeas relief on claim V.

E.

In claim III, the petitioner contends that he was denied a meaningful direct appeal because he was not provided with copies of the transcripts to prepare his own *pro se* supplemental Standard 4 brief on appeal that petitioner filed in addition to the appellate brief filed by his appellate counsel. A "Standard 4 brief" is recognized by Standard 4 of the Michigan Assigned Counsel rules promulgated by the state supreme court in 2004. *See* Admin. Order 2004-6, 471 Mich. cii (2004).

-24-

That rule permits a criminal defendant to file a *pro se* brief within 84 days after his lawyer files his brief on appeal. *See* Mich. Ct. App. IOP 7.212(F)-3 (stating that the administrative order permits "indigent defendants represented by appointed counsel [to] raise issues in [the Michigan appellate courts] that their attorneys decline to raise"). The petitioner availed himself of that right in this case, filing a Standard 4 brief that raised five additional issues and subissues.

This argument must fail, because the petitioner has pointed to no Supreme Court case that establishes a framework for protecting a criminal defendant's ability to represent himself on direct appeal. In fact, the Supreme Court has held explicitly that there is no "constitutional right to self-representation on direct appeal from a criminal conviction." *Martinez v. Ct. of App. of Cal., Fourth App. Dist.*, 528 U.S. 152, 163 (2000). That is because "[t]he Sixth Amendment does not include any right to appeal." *Id.* at 160. Nor is self-representation on appeal required by the Due Process Clause, as the Supreme Court was "unpersuaded that . . . a constitutional right of self-representation is a necessary component of a fair appellate proceeding." *Id.* at 161.

Certainly, a criminal defendant is entitled to competent representation by an attorney on direct appeal, but that right emanates from the Due Process Clause. *Evitts*, 469 U.S. at 396 ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). The Supreme Court has never held that the liberty interest protected by the Clause includes a right to participate directly in filing documents in the appellate courts. *See McMeans v. Brigano,* 228 F. 3d 674, 684 (6th Cir. 2000) (stating that the holding in *Martinez* that there is no right to self-representation on appeal "contradicts the petitioner's assertion that there exists a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel").

-25-

Under the First Amendment, the petitioner has "a constitutional right of access to the courts." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (collecting cases). "'[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.'" *Woodford v. Ngo*, 548 U.S. 81, 122 (2006) (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983)); *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 863 (6th Cir. 2012) ("The right to meaningful access to the courts is [] protected by the Petition Clause [of the First Amendment], among other provisions."). But that right is satisfied when the state provides "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).

It is undisputed that the petitioner was represented by appointed counsel during his direct appeal to the Michigan Court of Appeals. "[T]he Sixth Circuit repeatedly has recognized that, once counsel has been provided for a defendant, the state has fulfilled its constitutional obligation to provide access to the courts." *Parker v. Burt*, No. 11-1297, 2015 WL 139859, at *35 (W.D. Mich. Jan. 12, 2015) (citing *Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991); *Holt v. Pitts*, 702 F.2d 639, 640-41 (6th Cir. 1983)).

The petitioner's remedy for a perceived failure to present appellate issues is his claim of ineffective assistance of appellate counsel. This Court has rejected that claim in this case. Because the petitioner has not identified a provision of "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), that was violated by his appellate lawyer's failure to give him copies of his trial court transcripts, the petitioner is not entitled to habeas corpus relief on this claim.

-26-

F.

In his claim VI, the petitioner contends that his right to present a defense was violated when the judge excluded two of his witnesses from testifying after they violated the court's sequestration order. The petitioner presented this claim on direct appeal, and the court of appeals rejected it, writing:

> Here, the trial court precluded the testimonies of two witnesses, Pries and Lawson, who were discovered peeking through the courtroom door during the victim's testimony and who could hear the testimony from their position by the door. Because these witnesses could have overhead the testimony of the victim, whose testimony they were to impeach with their own testimonies, we conclude that there was no abuse of discretion in the trial court's decision to disallow their testimonies.

*Cummings*, 2009 WL 1352014, at *6.

A person accused of a crime has a constitutional right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). Rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's

-27-

decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d at 511-12.

The refusal of a state trial judge to allow a witness to testify for the defense when the witness violates a sequestration order is within the trial judge's discretion and does not deprive a criminal defendant of his constitutional rights. *Robinson v. Tennessee*, 474 F.2d 1273, 1273 (6th Cir. 1973) (*citing United States v. Brooks*, 303 F.2d 851 (6th Cir. 1962)). Because Pries and Lawson violated the court's sequestration order by peeking through the courtroom door during the victim's testimony, the Michigan Court of Appeals' rejection of the petitioner's claim was not an unreasonable application of clearly established Supreme Court precedent. The petitioner is not entitled to relief on this claim.

G.

In claims VIII and IX, the petitioner challenges the admission of Barbara Welke's testimony that the victim's post-sexual-incident behavior and her delay in reporting the sexual abuse was consistent with that of other minor victims of child sexual assault. In claim VIII, he argues that Welke's testimony went beyond the scope of her expertise and amounted to improper vouching for the victim's credibility. In claim IX, the petitioner argues that Welke lacked the expertise to be qualified as an expert witness to explain the reasons why a minor sexual assault victim would delay in reporting the sexual misconduct to authorities. The petitioner raised these issues in the state court via his post-conviction motion for relief from judgment, and he framed the issues as a violation of

-28-

state evidence law, for the most part.  The trial judge denied the motion, rejecting the arguments on those issues under state evidence law.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  A claim of error concerning the application of a state evidentiary rule does not state a ground for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only where admission of the disputed evidence rendered the trial "'so fundamentally unfair as to deprive the petitioner of due process'" may it provide grounds for granting a writ of habeas corpus.  *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006) (quoting *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)).  "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend [] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).  Even if some rule of evidence were violated, relief on collateral review will be granted "only when a trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Ford v. Curtis*, 277 F.3d 806, 809 (6th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The admission of Barbara Welke's testimony and the allowable scope of her opinions were matters of state evidence law exclusively.  Allowance of the expert's testimony did not affect the fundamental fairness of the trial or deprive the petitioner of the procedural process he was due.  But the petitioner also criticizes Welke's testimony because she "vouched" for N.M.'s credibility.  That argument likewise fails.  The record shows that in the first instance Welke was asked whether N.M.

-29-

was providing accurate information during an interview, Welke responded that "[N.M.] was less than forthright about what had happened during those three days."  Trial tr. at 387 (Mar. 7, 2007).  When the prosecutor asked Welke about her opinion on N.M.'s candor during the second interview, the trial judge sustained a defense objection and instructed the jury that it was the sole determiner of credibility.  *Id.* at 389-90.  The petitioner's argument that Welke was allowed to vouch for N.M.'s credibility is not supported by the record.

Moreover, there is no federal law or rule that prevents one witness from "vouching" for the credibility of another witness.  To the contrary, the Federal Rules of Evidence permit the practice under certain circumstances.  *See* Fed. R. Evid. 608(a) (stating that "[a] witness's credibility may be attacked *or supported* by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony *in the form of an opinion* about that character") (emphasis added).  No federal constitutional error can be found in the state court's treatment of Welke's testimony.

H.

In his claim XI, the petitioner contends that his rights were violated when he was not permitted to take a polygraph examination in order to prove his innocence.  In the alternative, the petitioner contends that trial counsel was ineffective by failing to request a polygraph.

Michigan law gives a defendant accused of a criminal sexual conduct offense a right to be given a polygraph upon his request.  Mich. Comp. Laws § 776.21(5) ("A defendant who allegedly has committed a [criminal sexual conduct] crime shall be given a polygraph examination or lie detector test if the defendant requests it.").  The victim of such an offense may not be asked to take a polygraph examination, but if the defendant takes and passes the test, "[a] law enforcement officer

-30-

shall inform the victim."  Mich. Comp. Laws § 776.21(3).  Other than telling a victim that the accused has passed the test and that "the test indicates that the person may not have committed the crime," *ibid.* the statute does not set out any consequences or benefits to an accused person for taking a polygraph examination.

This statute was enacted by the State of Michigan.  It is clear, however, that a defendant accused of a criminal sexual conduct crime has no federal constitutional right to take a lie detector test.  And even if the petitioner took such a test in this case, it would have had no evidentiary impact on the trial.  Polygraph test results are not admissible as evidence in criminal cases in Michigan. *People v. Phillips,* 469 Mich. 390, 397; 666 N.W. 2d 657, 661 (2003) (citing *People v. Ray*, 431 Mich. 260, 265, 430 N.W.2d 626, 628 (1988); *People v. Barbara*, 400 Mich. 352, 364, 255 N.W.2d 171, 175 (1977)).

The petitioner argues that he may have derived some collateral benefit from a favorable polygraph test result, such as a more enthusiastic performance from his defense lawyer, or helpful witnesses that may have come forward to assist in his defense, and therefore defense counsel was ineffective by not asking for the test.  Of course, if the petitioner failed the test, the opposite might have occurred.  The state trial judge, before whom the petitioner first raised this issue in his post-judgment motion, held that the petitioner waived his right to take a polygraph test because he never asked for it, and concluded that any benefits that might flow therefrom were "speculation." Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief.  *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  Because a favorable test result would have at most provided the petitioner a bargaining position with the prosecutor, and would not have generated any admissible evidence, the rejection of this claim by

the trial court and the Michigan appellate courts on post-conviction review was not an unreasonable

application of clearly established federal law. *See Carey v. Musladin,* 549 U.S. 70, 77 (2006)

(holding that "an open question in [Supreme Court] jurisprudence" will not support a conclusion that

"the state court's decision was . . . contrary to or an unreasonable application of clearly established

federal law").

I.

In claim XII, the petitioner argues that his due process rights were violated when the trial

court "invaded the province of the jury" by making factual findings for the jurors.  The petitioner

refers to the following exchange, which took place during defense counsel's cross-examination of

N.M.:

> Q: So when I asked you, 'question: so she went to get alcohol for what, for her, or
> for you, or everybody?' and your answer was, 'Answer: Chad and her.' You didn't
> include yourself, correct?
> A: Correct.
> Q: Okay, and now you're saying that you did drink?
>
> A: I did drink.
> Q: So when you said that, that was a lie?
> . . .
> The Court: Excuse me.  That does not — Characterizing that as a lie is inappropriate.

Trial counsel then rephrased his question:

> Q: It was not the full story, correct?
> A.  Correct.

Trial Tr. I, at 244-45 (Mar. 6, 2004).

The petitioner contends that the judge's comment amounted to an improper judicial fact

finding that the victim had not lied about not drinking.  The petitioner contends that the judge

-32-

essentially found the victim to be credible, and in doing so he "invaded the province of the jurors," who have the exclusive function of determining the facts and witness credibility.

The trial judge rejected this claim on post-conviction review, where the claim was raised first, finding that if his comments were erroneous, they were harmless:

> Defendant has not demonstrated that the Court invaded the province of the jury in this regard. The elements of the charged offenses do not include providing a child with alcohol, nor do they include sexual interaction with an intoxicated child. The relevant purpose of this questioning was to discredit the victim's recollection of events by introducing evidence to the jury that she was intoxicated. Therefore, any error in this statement from the bench was clearly harmless beyond a reasonable doubt since there is no reliability that the evidence contributed to the conviction.

*Cummings,* No. 2006-406086-FC, at * 14-15 (footnote omitted).

The state trial judge's comment was innocuous. It is true that the trial judge cannot take from the jury the basic function of determining witness credibility. But it is also true that "[a] judge 'may analyze the evidence, comment upon it, and express his [or her] views with regard to the trial testimony of the witnesses.'" *United States v. Holloway*, 257 F. App'x 869, 872-73 (6th Cir. 2007) (quoting *United States v. Glover,* 21 F.3d 133, 137 (6th Cir. 1994)). The trial judge's criticism of defense counsel's characterization was not tantamount to making a credibility finding, or telling the jury how to make one. The trial judge was well within his authority to tell defense counsel that his characterization of N.M.'s previous statement was inaccurate, and to allow him to rephrase his question. *See United States v. Vujovic*, 635 F. App'x 265, 271 (6th Cir. 2015) (holding that the trial judge's instruction to defense counsel during direct examination of the defendant to "reel him in" "did not affect the jury's ability to independently assess [the defendant's] credibility").

And the trial judge's determination of harmlessness of any possible error reasonably applied Supreme Court precedent. To hold otherwise, this Court must find that the judge's comment "had

a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). That finding cannot be made on this record. The comment was made in reference to an ancillary matter, which did not concern any of the elements of the charged crimes. It did not amount to an express finding of credibility on any material aspect of N.M.'s testimony. Moreover, the judge's statement was isolated, the victim's consumption of alcohol was irrelevant to whether or not the petitioner sexually abused the victim, and the judge did not elsewhere comment on the victim's credibility. And the judge instructed the jury the next day at the conclusion of the case — twice — that it was the jury's "job" ("and nobody else's") to "decide what the facts of the case are." Trial Tr. II, at 528-29 (Mar. 7, 2004). The petitioner is not entitled to relief on this claim.

J.

In claims VII and XIV, the petitioner raises two sentencing issues. The Court will lastly discuss the petitioner's two sentencing claims together. In claim VII, he contends that he did not receive timely notice of the supplemental information charging him with being a fourth felony habitual offender. In claim XIV, he argues that the sentencing guidelines were scored improperly.

Both of these claims were rejected by the state courts by applying state law. The court of appeals held that the petitioner received proper notice of the prosecutor's intention to seek a sentence enhancement based on the petitioner's recidivism. *Cummings*, 2009 WL 1352014, at *5. The trial judge held that the guidelines were scored properly, when deciding the post-conviction motion.

The petitioner's claim that he received inadequate notice of the habitual offender charge under Michigan law does not state a claim that is cognizable in federal habeas review. *Tolbert v.*

-34-

*LeCureaux,* 811 F. Supp. 1237, 1240-1241 (E.D. Mich. 1993). When ruling on the post-conviction motion, the state trial court determined that the guidelines were scored correctly. A federal habeas court cannot second-guess a state court's determination of such a state law issue. *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ( "A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

III.

The state courts reasonably applied federal law as established by the Supreme Court when addressing the petitioner's claims. Therefore, the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
Dated:   August 9, 2016                    United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 9 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI